Mr. Justice Scott delivered the opinion of the Court. The main question presented is, whether or not the plaintiff below, a banking corporation created by the Legislature of Mississippi, was within the savings of our statute of limitations. The enacting clause of ours, like that of the statute of Jac, does not' contemplate the character of the plaintiff, but looks simply to the action. Not so, however, with the saving clause; that looks not to the action, but alone to the character of the plaintiff, and if in any case a plaintiff be saved from the operation of the statute at all, it is because alone of being within the description of persons who are the objects of the saving clause. It is, therefore, not important, to the operation of the statute, who brings the suit, for lapse of time will equally bar the action by whomsoever the proceedings might be set on foot. Hence, Sir Eaidly Wilmot remarked, in the House of Commons, that infants, like all other persons, would be barred by an act limiting suits at law, if there was no saving clause in their favor. Beckford vs. Wade, 17 Ves. 87. But, on the other hand, it is of vital importance to the party claiming the benefit of the saving that it be shown that he is entitled to it by express enactment, because his claim to exemption being against the current of the law and founded upon exceptions by no means co-extensive with its effective provisions, all presumptions are against him. And, upon a like principle, the savings of the statute have never been so liberally construed as its effective provisions; the courts having, almost universally, held that, when a party was not expressly within the savings, all that was to be inferred was simply that the legislature did not think that there was any sufficient cause for a prolongation of the right of such party to sue, beyond the legal time allowed to suitors generally. Upon this point, Mr. Angell, in his work' on limitations, (ch. 19, sec. 3, page 209,) remarks: “ There appears to be no authority in favor of the doctrine that if the persons mentioned in this section (the saving clause) are not ex-pressty excepted from the operations of the statute of limitations, there exists a virtual exception.” And, in Sacie vs. De Graff, (1 Cow. R. 356,) this doctrine was applied, and there the Court say, “ Though the defendant’s virtual protection from prosecution by his discharge produced the same result ad his absence from the State, yet we are not warranted, by any rule of construction, in deciding that every cause, which produces the same effect as the one mentioned in the act, comes within it. ” And, having laid down this preliminary principle, we proceed more directly to the question. The party in this case claims to be within the saving of the statute upon the grounds of being a person and beyond the limits of the State; and bases his position upon the doctrine of the case of Loui. R. R. Co. vs. Letson, (2 How. (U.S.) Rep. 558,) by which the case of The Bank vs. Deveaux, and those decided upon its authority, were overruled. After looking into all these cases, although we have felt very forcibly the weight of the argument of the learned counsel, in the case before us, challenging the doctrine of the case cited from 2 Howard, we have become satisfied that those doctrines are founded in the law and far more reasonable than the doctrines of the case overturned, and if they are not to the full extent altogether satisfactory for the reason that some of the truths of these doctrines be not in fact prosy truths but legal fictions, requiring for their realization an imaginative reach somewhat beyond that indulged on this subject by the fathers of the common law, they themselves set the precedent. If, in the days of Lord Coke (2 Inst. 703,) and Lord Mansfield, (Rex vs. Goodwin, Cowp. 79,) a corporation and body politic was held to be an occupier and inhabitant of land for the purposes of taxation, and “for the general purposes and objects of a law, might be regarded as having corporeal qualities,” (Bank vs. Deveaux, 2 Cond. R. 193,) it would not seem remarkable that, in our day, when greater legislative skill had been attained in the creation of such beings, whereby the creature had been made to approach nearer to the creator, that they should be now deemed inhabitants of the State where they are created and transact business, capable of being treated as a citizen for all purposes of suing and being sued. And, indeed, however acute, metaphysical, and abstract may be the reasoning employed to prove a corporation aggregate, an invisible, intangible, voiceless, artificial being — a mere legal entity, lighter than a gossamer tissue, —there is much of locality, life and individuality, that are almost inseparably connected with the idea of such a being, so much do they mingle with us in the every day business of practical life. But, before the case of The Bank vs. Deveaux had been overturned, and the quality of citizenship for legal purposes had been established for corporations, Chief Justice Taney, in The Bank of Augusta vs. Earle, (13 Pet. 588,) after remarking that, in the case of The Bank vs. Deveaux, “ the Court had confirmed its decision in express terms to a question of jurisdiction, and had evidently went even so far with some hesitatiorf,” plainly recognized the legal capacity of a corporation lor commorancy, unconnected with the commorancy of the individual corporators. He said : “It must dwell in the place of its creation, and cannot migrate to another sovereignty. But although it must live and have its being in that State only, yet it does not, by any means, follow that its existence there will not be recognized in other places; and its residence in any other State creates no insuperable objection to its power of contracting in another. It is, indeed, a mere artificial being, invisible and intangible; yet it is a person for, certain purposes in contemplation of law, and has been recognized as such by the decision of this Court.” And this portion of the opinion of Chief Justice Taney is quoted by the Supreme Court of New York in the case of Falkner vs. The Delaware and Raritan Canal Company, (1 Denio 444,) and commorancy expressly recognized for that corporation and applied in a case where the statute of limitations was pleaded. And although Chief Justice MaRSeall was evidently averse to the doctrine that, in general, a corporation was to be deemed to have commorancy, he was by no means satisfied that, in rear-son and justice, that exposition of it given in the case of The Bank vs. Deveaux, on a question of jurisdiction, could be applied on a question of limitation; for he remarked, in the case of The Bank vs. McKensie, (2 Brock. 400,) in reference to the case of Deveaux, “ That however difficult it might be to apply the principles of that case in reason and justice to a contract made by an individual residing and sued in a State where no office or banking house existed, and where a straggling corporator was to be found, no difficulty can exist in applying it to a case like this where a suit is brought in the State in which the contract was made, in which it was to be performed, and in which the agents and members of the corporation, with whom the debt was contracted, and to whom it was to be paid, resided. And, in the decision of that case, it is manifest that the commorancy of the legal entity had much more influence on his mind than the commorancy of the corporators, as he placed great stress upon the facts that the Bank was authorized to establish an office of Discount and deposit, whenever it might think fit: that the banking house at Richmond was as fixed and notorious as that at Philadelphia: that the agents acting at Richmond were as notorious and completely agents as those acting at Philadelphia, and that the contract was made in Richmond with agents who resided there at a banking house there established, and to be performed in that place, and therefore he said of the Bank, that, “ so far as respects the particular contract, it may, with entire propriety, be said to reside in Richmond.” Thus, in effect, upon a question of limitation, recognizing the commorancy of the Bank, in resting his conclusion upon the ground that he did'. We feel authorized, therefore, upon authority sustained, as we think, sufficiently by sound reasoning to recognize as law, that a corporation, created by, and transacting business in a State, is to be deemed an inhabitant of such State, capable of being treated as a citizen for all the purposes of suing and being sued, and that it can dwell only within the sovereignty of its creation, and cannot migrate to another sovereignty; and thus holding the law, it is clear that the plaintiff below was a person beyond the limits of this State at the accrual of his cause of action and has ever since resided. But the question still recurs, was the plaintiff such a person as was within the saving of the statute ? The provisions are : “ If any person entitled to bring any action, &c., such person shall be at liberty to bring such action within the time specified in this act after such disability shall be removed.” Of the disabilities mentioned, only one can possibly apply to a corporation; the others, in the very nature of things, having reference exclusively to natural persons. That single disability is “ being beyond the limits of the State,” and we have just seen that that disability can never be removed. The consequence is that, if corporations in another State were within the saving, the saving as to them would operate as a perpetual exemption from the bar of the statute. No reason can be conceived why the legislature should have desired or intended that a foreign corporation should be placed on a more favorable footing than both citizéns of this State and all other non-residents. For such discrimination, no earthly reason can be imagined. It is true that we have a statute which has made but little alteration in the law as it stood before, that, when any “person” is described or referred to in a statute, “ several persons, and females as well as males, and bodies corporate as well as individuals, shall be deemed included,” (Dig,, p. 959, sec. 3,) but this, like most rules of law, falls short of universal application, and, like all other statutes, must have a reasonable interpretation; else the most absurd consequences would follow, which can never be considered to be the will of the legislature. No one would contend that this statute was of universal application in the criminal law, or that it could be applied if the word “natural” was prefixed to the word “person” in any statute. And as we think it would be unreasonable to apply that rule to foreign corporations in this case because they would thereby be placed, not upon mere terms of equality with others, but upon higher and more favorable grounds than any other plaintiffs whomsoever. Besides this, the words, “ after such disability shall be removed,” show that natural persons were in the mind’s eye of the legislature; and as these were only to be saved temporarily, there is no room for any presumption, that any others were to be perpetually saved; especially where such presumption would have to be indulged in the full face of the policy of the enactment itself, and we have seen in the outset that no saving whatever is to be presumed but all must affirmatively be shown. And, in view of this principle, this may be stated even stronger in this wise: The statute having, by the words we have quoted, distinctly indicated natural persons as the character of persons designed to be saved from the operation of the statute, thereby excluded all other persons. Had the statute excluded, byname, all natural persons, who were absent at the accrual of their causes of action and while this absence was continuous thereafter, and enacted nothing more, no one would have contended that artificial persons were included, although the word “ person” was used, and the words actually employed to designate the character of the persons designed to be saved, are scarcely less conclusive of their deseiption. But the authorities are not altogether silent on this' point. A question, almost identical, arose on the 27th section of the statute of limitations of the State of New York, the provisions of which arq the same as those of the 20th section (now repealed) of our act of 1839, (Rev. Stat., p. 529,) where the words used are “ the return of such person into the State,” and “ after such cause of action shall have accrued such person depart from and reside out of the State,” &c., and the. Supreme Court of New York decided that corporations were not embraced; and, in that case, the Court remark, “ The word person is here used, and that word in a statute may include a corporation as well as a natural person ; but it will not be understood in the former sense when it would be repugnant or absurd to give it such an application. The cases excepted by section 27 are against persons who have, for a time, been out of the State, but have afterwards returned within its limits. These provisions manifestly apply to natural persons only, and cannot be made to embrace corporations.” Falkner vs. The Delaware and Raritan Canal Co., 1 Denio 443. McQueen vs. The Middleton Manuf. Co., 16 John. R. 5. We are, therefore, of opinion that corporations were not embraced within the .savings of our statute of limitations, put in force the 20th March, 1839, and consequently that the statute began to run upon both of the demands sued in this case from the date of their maturity respectively. But, as only one of these demands was barred (as the facts are presented to us by the pleadings) at the time of the passage of the act of the 14th December, 1844; and as this action was commenced before the expiration of the two years allowed to non-residents by that act, it becomes necessary for us to determine, as the replication sets up that act, whether or not foreign corporations were embraced in the privilege of two years extended to all persons who, at the passage of that act, resided beyond the limits of this State. The savings of the act of 1839, which we have just held did not embrace corporations, did embrace, however, not only non-residents but absentee citizens of this State. The privilege extended by the act of 1844, being to “ all persons who reside beyond the limits of this State at the passage of this act,” was consequently not a mere re-enactment of the savings of the act of 1839, which had been repealed by the act of 14th January, 1843, but was an enactment in favor of a different class of persons, that is, of persons “ residing beyond the limits of this State,” and therefore absentee citizens of this State are excluded'from the provisions of this privilege, although embraced within the saving of the act of 1839. Itis true this enactmentis about the same subject matter, so far as savings against the operation of the statute are concerned, but as absentee citizens of this State are excluded frorh the privilege of the act of 1844, a change of policy as to the persons to be saved is indicated. And as the description of persons embraced in the act of 1844 is sufficiently broad to include foreign corporations, and there is nothing repugnant, absurd or unreasonable in their being placed, not in a condition of superiority, but of simple equality with other creditors who reside beyond the limits of this State, we see no reason at all for holding them excluded from the privilege of two years; and it is, therefore, our opinion that they are fairly embraced within that provision. This enactment in favor of persons residing beyond the limits of this State at the passage of the act of December 14, 1844, was not intended to revive causes of action that were at that time barred by any statute of limitations, the words “ notwithstanding such suit or suits may be barred,” having reference not •to the time of the passage of that act, but to the time within the period of the two years allowed, when any suit might be commenced. Thereby, in legal effect, prolonging the time of limitation on any cause of action belonging to any non-resident, not barred at the passage of the act (but which would be otherwise barred in the regular running of the statute of limitations at any time between the passage of the act and the expiration of the period of two years) to the end of that period. One of the demands sued in this action was in the latter category. Maturing on the 7th March, 1842, it would have been barred in the onward running of the statute in March, 1845, but the legal effect of the act of 1844 having, as to this claim, prolonged the time for commencing suit till the 14th December, 1846, it was not barred at the commencement of this suit. The other demand, having matured in March, 1841, was barred in March, 1844, and, being unaffected by the act of December, 1844, it remains barred. The Court, therefore, erred in assessing the damages to the extent of the principal and interest of both demands instead of to an amount equal to that due upon the demand alone that matured in March, 1842. The issue joined and tried by the jury and found for the plaintiff below was an immaterial one. There was no error in the ruling of the Court excluding testimony, nor in allowing the evidence by the printed book purporting as it did to have been published by authority, (Dig., p. 490, section 2): nor was the evidence unnecessary, as it proved the powers and capacity of the corporation to contract, although its existence and capacity to sue were admitted by the plea. The burthen to discredit thé book was on the defendant below. 3 Pick. 293. Finley vs. Corporation of Washington, decided at the present term. Let the judgment be reversed, and the cause remanded to be proceeded with.